C. C. Bova and Pearl Ann Bova v. Commissioner.
Bova v. Commissioner
Docket No. 28708.
United States Tax Court
T.C. Memo 1954-7; 1954 Tax Ct. Memo LEXIS 241; 13 T.C.M. (CCH) 369; T.C.M. (RIA) 54113; April 13, 1954, Filed *241 Robert Ash, Esq., 550 Munsey Building, Washington, D.C., and Charles H. Burton, Esq., for the petitioners. A. Russell Beazley, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined deficiencies and additions for fraud against the taxpayers as follows: Addition
Year
Deficiency
for Fraud
1941
None
$ 1,980.62
1942
$3,202.43
1,601.22
1943
2,808.74
15,171.20 The only issues presented for decision are whether the Commissioner erred in determining additions for fraud under section 293(b), and in determining the deficiency for 1942 after the running of the statute of limitations. Findings of Fact The petitioners are husband and wife. They filed timely joint returns for the taxable years with the collector of internal revenue for the District of Virginia. C. C. Bova signed each return. Pearl signed the returns for 1941 and 1942 but not the return for 1943. Each of those returns was false and fraudulent with intent to evade tax. C. C. Bova filed amended joint returns for 1941, 1942 and 1943 on January 8, 1945, in which he reported larger amounts of income and larger amounts of tax due *242 than had been reported on the original returns for those years. Those returns were prepared from the books of C. C. Bova's business. The Commissioner in his deficiency notice made no change in the net income as disclosed by the amended return filed for 1941 but added $868.12 to the net income as disclosed by the amended return for 1942 and $3,653.41 to the net income as disclosed by the amended return for 1943 with the explanation that each adjustment represented Federal income taxes which were not deductible. He further determined that the 50 per cent addition to the tax for fraud under section 293(b) was due for each year and computed it for 1941 on the difference between the tax shown on the original return and that shown on the amended return and for the other years on the difference between the tax shown on the original return and the total taxes finally determined for the year. A part of the deficiency for each of the years 1941, 1942 and 1943 was due to fraud with intent to evade tax. Opinion MURDOCK, Judge: C. C. Bova was engaged in the wholesale fruit, produce and beverage business in Roanoke during the three taxable years. He employed James E. Ottoway in the early *243 summer of 1941 as a bookkeeper and from some time near the close of that year until early in 1944 Ottoway was in charge of Bova's books. He was assisted by two office clerks. Ottoway furnished monthly and annual reports of the business to Bova for 1941, 1942 and 1943 and prepared the income tax returns of the petitioners for the years 1941 and 1942, and also prepared a pencil draft of a proposed income tax return of the petitioners for 1943 which was later typed by others as the return of the petitioners for that year. Bova signed the returns thus prepared. Ottoway was graduated from Virginia Polytechnic Institute in 1935 with the Degree of Bachelor of Arts, having majored in accounting. He had had some previous business or clerical experience prior to being employed by Bova as a result of the latter's newspaper advertisement for a bookkeeper. Ottoway was employed by Bova at a salary of $25 per week which was increased from time to time until it amounted to $60 a week. He left Bova's employ to enter the Armed Forces of the United States, was commissioned as a reserve officer in the United States Navy, rising to the rank of Lieutenant-Commander, and after the war became assistant *244 manager and later vice-president of the Checker Cab Company, which latter position he held at the time of the hearing. Ottoway kept Bova's books properly and correctly during the time of his employment by Bova and the amended returns were prepared in accordance with those books. Ottoway testified that when he showed Bova the figures for his tax return for 1941 Bova told him that something would have to be done to reduce the amount of the taxes and to reduce the sales. Ottoway made changes, the effect to which was to reduce the income shown on the return by $13,000, and the petitioners signed and filed the return. Ottoway testified that a similar occurrence took place when he was preparing the petitioner's return for 1942, at which time Bova again told him to reduce sales. He prepared the return omitting $9,000 of sales and the petitioners signed and filed the return for that year. He also testified that he ignored Bova's instructions to make changes on the books to show the reduced sales as reported on the returns for 1941 and 1942. Bova denied that he had ever instructed Ottoway to falsify his returns for 1941 and 1942. Ottoway was not in the employ of Bova after January 14, 1944. However, *245 he returned to Roanoke on leave from the Navy on March 14, 1944 and on that day, according to his testimony, he was called several times by Bova and Carl Wiseman, a salesman for Bova, who insisted that he come to the office of Bova because Wiseman was unable to insert the figures properly in the 1943 form of income tax return. Bova testified that he had had no discussion with Wiseman prior to that day about the preparation of the Bova income tax return for 1943 and did not know that Wiseman was or was not capable of doing anything about that return. He further testified that he never contacted Ottoway to have him prepare the 1943 return and did nothing about the matter because Ottoway had previously told him not to worry that he, Ottoway, would "be back and file my 15 March return". Ottoway came to Bova's office in the late afternoon of March 14, 1944 for about an hour in response to several calls from that office and entered in pencil on a form of return figures given him by Bova or Wiseman, knowing that the amount of gross sales used was much less than that shown on the books and a work sheet for 1943 which he had prepared before going into the Navy. He then departed and thereafter *246 a typewritten return was prepared from his pencilled copy and was signed and filed by Bova. Sales were understated in that return in the amount of $49,000. Bova testified that he did not know that his sales were grossly understated in that return and never told Wiseman or Ottoway to understate them. Bova, Ottoway and Wiseman were indicted for falsifying the petitioners' returns for some or all of the years 1941, 1942 and 1943, each plead nolo contendere when called for trial, Bova was fined $5,000, Ottoway was fined $750 and Wiseman was fined $1,000, and Bova paid all three of the fines. Bova, at sometime not shown by the record, had Wiseman arrested and sent to jail for appropriating funds belonging to Bova. Wiseman was not called as a witness in the present case. Bova had no one taking the place of Ottoway from January 14, 1944 until he employed an accountant on a spare time basis in the latter part of 1944. This man had furnished him similar services up to some time in the latter part of 1941. This accountant, in his efforts to straighten out the books for 1944, discovered that gross sales as shown on the return filed for 1943 were $49,000 less than the gross sales shown on *247 the books as kept by Ottoway for 1943. He reported this to Bova and the latter called in a lawyer who advised him to employ a firm of certified public accountants to check his books for 1941, 1942 and 1943 and file correct amended returns if they found that there had been understatements on the original returns. An internal revenue agent came in to examine Bova's books before the certified public accountant had undertaken the work. He was told of the understatement for 1943 and discovered that there were understatements of gross sales amounting to $13,000 for 1941, $9,000 for 1942 and $49,000 for 1943 in the returns as compared to the books kept by Ottoway. The amended returns were filed thereafter. The petitioners do not contest the amounts of the deficiencies determined by the Commissioner which differ from the amended returns only in the disallowance of deductions claimed for Federal income taxes. The only question which requires decision is whether the original returns were false and fraudulent with intent to evade taxes and whether any part of the taxes due for each year in excess of those shown on the original return for that year were due to fraud with intent to evade tax. *248 If Bova has not violated his oath to tell "the truth, the whole truth and nothing but the truth" in this proceeding then, of course, there is no fraud, but if Ottoway has told the truth then, necessarily, Bova has not. Two witnesses testified as to the good reputation of Bova for integrity. He relies also upon other evidence to show the unlikelihood of his falsifying his returns, including evidence of his own lack of education and of his own inability to understand his books, the monthly and annual reports which he required his bookkeeper to furnish him, and the returns which he filed. He testified that he had never directed Ottoway or Wiseman to falsify his returns and had no knowledge that his returns were incorrect when filed. A charge of fraud against a successful and prominent businessman, like Bova, is a serious matter and the Court has carefully considered not only the evidence referred to herein but all of the evidence and has carefully observed all of the witnesses in its efforts to arrive at a proper decision. It has tried to think of the possible motives of the various actors, particularly those of Bova and Ottoway. The latter was "desperately" in need of a job when he *249 came to Bova. Bova gradually increased his salary from $25 a week to $60 a week. Ottoway did a good job of keeping the books and left Bova's employ only in order to enter the Armed Forces of the United States during the war. It is difficult to find any motive which would prompt him to falsify the income tax returns of Bova unless, as he testified, the latter directed him to do so and he was afraid he would lose his job if he refused to falsify the 1941 and 1942 returns. Bova had reliable reports of his business which showed the amount of his gross sales and the amount of his income for each of the three taxable years. He had directed that such reports be prepared for his information and the Court is satisfied, from its observation of him during the course of the trial and from the evidence as a whole, that he was fully capable of understanding what his income for each year was and what the gross sales of his business for each year were. Not only did the understatement of sales mentioned above appear on the returns but Bova reported net profits from his business of only $10,747.20 for 1941, $6,564.13 for 1942 and $13,858.64 for 1943 on his returns for those years when he knew from the *250 reliable information furnished him that his actual income for 1941 and 1942 was more than twice as large and that for 1943 was more than three times as large as the amounts he reported. The Court is convinced that Bova deliberately filed false returns for the purpose of evading tax, knowing that the gross sales and net income figures shown on those returns to represent the gross sales and net income of his business were grossly understated. Decision will be entered for the respondent.